# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RAVGEN, INC.,<br>    Plaintiff,<br> v.<br>ARIOSA DIAGNOSTICS, INC.,<br>ROCHE SEQUENCING SOLUTIONS, INC.,<br>ROCHE MOLECULAR SYSTEMS, INC., and<br>FOUNDATION MEDICINE, INC.,<br>    Defendants. | C.A. No. 20-cv-1646-RGA-JLH<br><br>**JURY TRIAL DEMANDED** |
| RAVGEN, INC.,<br>    Plaintiff,<br> v.<br>MYRIAD GENETICS, INC., and<br>MYRIAD WOMEN'S HEALTH, INC.,<br>    Defendants. | C.A. No. 20-cv-1730-RGA-JLH<br><br>**JURY TRIAL DEMANDED** |
| RAVGEN, INC.,<br>    Plaintiff,<br> v.<br>BIORA THERAPEUTICS, INC.,<br>    Defendant. | C.A. No. 20-cv-1734-RGA-JLH<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO SET AN EARLY INEQUITABLE CONDUCT TRIAL**

Dated: August 14, 2023

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301

John M. Desmarais (*pro hac vice*)
Kerri-Ann Limbeek (*pro hac vice*)

Brian D. Matty (*pro hac vice*)
Jamie L. Kringstein (*pro hac vice*)
Kyle G. Petrie (*pro hac vice*)
Joze Welsh (*pro hac vice*)
Jun Tong (*pro hac vice*)
Deborah J. Mariottini *(pro hac vice)*
Peter Zhu (*pro hac vice*)
Benjamin N. Luehrs (*pro hac vice*)
Frederick J. Ding (*pro hac vice*)
Julianne M. Thomsen (*pro hac vice*)
William Benjamin Nichols (*pro hac vice*)
**DESMARAIS LLP**
230 Park Avenue New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
jdesmarais@desmaraisllp.com
klimbeek@desmaraisllp.com
bmatty@desmaraisllp.com
jkringstein@desmaraisllp.com
kpetrie@desmaraisllp.com
jwelsh@desmaraisllp.com
jtong@desmaraisllp.com
dmariottini@desmaraisllp.com
pzhu@desmaraisllp.com
bluehrs@desmaraisllp.com
fding@desmaraisllp.com
jthomsen@desmaraisllp.com
wnichols@desmaraisllp.com
*Attorneys for Plaintiff Ravgen, Inc.*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. RELEVANT FACTUAL BACKGROUND ..........................................................................2

    A. Defendants Convinced The Court To Halt These Cases For A Year To Let The PTAB Resolve Defendants' Preferred Invalidity Defenses And Repeatedly Promised The Court Those Defenses Would End These Cases. ..................................................................................................................................2

    B. Roche Has Admitted In Other Litigations That The "Controversy" That Defendants Argue As The Basis For Inequitable Conduct Was Actually Resolved In Ravgen's Favor. ............................................................................................3

    C. Judge Klausner Did Not Consider PTAB Final Written Decisions Or Roche's Contradictory Positions When He Decided Summary Judgment And Scheduled A Bench Trial. ..................................................................................4

III. ARGUMENT ..........................................................................................................................5

    A. The Court Should Not Modify The Case Schedule For A Second Time To Give Another Defense Chosen By Defendants Priority Over Ravgen's Claims. ..........................................................................................................................6

    B. Judicial Resources Will Not Be Conserved By An Early Bench Trial, And Resources Will Instead Be Wasted If Defendants Fail To Produce Sufficient Evidence To Warrant Any Trial On Inequitable Conduct. .....................7

    C. Any Trial On Inequitable Conduct Should Occur At The Same Time As A Jury Trial For Efficient Resolution Of All Claims. ............................................11

IV. CONCLUSION.....................................................................................................................13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AAMP of Fla., Inc v. Auto. Data Sols., Inc.*,
    No. 8:13-CV-2019-T-35TGW, 2015 WL 12843845 (M.D. Fla. Oct. 8, 2015) ................ 10

*Armament Sys. & Procs., Inc. v. IQ Hong Kong, Ltd.*,
    2007 WL 101230 (E.D. Wisc. Jan. 10, 2007) .................................................................. 12

*Aventis Pharma S.A. v. Hospira, Inc.*,
    675 F.3d 1324 (Fed. Cir. 2012) ........................................................................................ 10

*California Inst. of Tech. v. Broadcom Ltd.*,
    No. CV 16-3714-GW (AGRX), 2019 WL 8807748 (C.D. Cal. July 1, 2019), *aff'd*,
    25 F.4th 976 (Fed. Cir. 2022) .......................................................................................... 10

*Gomez v. Trustees of Harvard Univ.*,
    676 F.Supp. 13 (D.D.C. 1987) .......................................................................................... 7

*Hoffman v. Jacobi*,
    No. 4:14-CV-00012-SEB, 2014 WL 5488430 (S.D. Ind. Oct. 29, 2014) ......................... 7

*Koninklijke Philips N.V. v. Telit Wireless Sols., Inc.*,
    No. 20-1708-CFC (D. Del. Feb. 22, 2023) ..................................................................... 12

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
    No. CV 17-14-JFB-SRF, 2019 WL 365708 (D. Del. Jan. 30, 2019) ............................... 12

*Neology, Inc. v. Fed. Signal Corp.*,
    No. CA 11-672-LPS-MPT, 2012 WL 4342070 (D. Del. Sept. 21, 2012) ......................... 6

*Robocast, Inc. v. Apple Inc.*,
    39 F. Supp. 3d 552 (D. Del. 2014) .................................................................................. 13

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ......................................................................................... 8

*Vaxcel Int'l Co. v. HeathCo LLC*,
    No. CV 20-224-LPS, 2022 WL 611067 (D. Del. Feb. 3, 2022) ....................................... 6

*WebXchange Inc. v. Dell Inc.*,
    No. CIV.A. 08-132-JJF, 2009 WL 5173485 (D. Del. Dec. 30, 2009) .............................. 7

Ravgen opposes Defendants' rehashed request to again change the case schedule to prioritize Defendants' new preferred defense (inequitable conduct) over Ravgen's claims. If a bench trial on inequitable conduct is ultimately needed in this case, it should be conducted at the same time as any jury trial to resolve both sides' claims concurrently when the Court, witnesses, and counsel are available for trial. That approach is routine whenever jury issues and bench issues both need to be litigated, and Defendants provide no compelling reason for departing from that standard approach to give their current favorite defense preferential treatment. The Court should deny Defendants' motion for an early bench trial (C.A. No. 20-1730, D.I. 157 ("Motion")).

I.  **INTRODUCTION**

Defendants are asking the Court for a third time to give priority to a defense of Defendants' choosing before litigating Ravgen's infringement claims. Any defendant would prefer to take multiple, serial chances at defenses before ever having to face a jury on a plaintiff's claims. But such an approach is the antithesis of judicial efficiency, and Defendants' request should be denied for that reason alone.

Defendants again promise a defense that—according to Defendants—will eliminate these cases and avoid up to four jury trials, but such promises from Defendants have fallen flat before. Defendants' best defense in this case was invalidity, and Defendants obtained a stay to allow IPRs challenging Ravgen's patents to proceed first. Defendants repeatedly argued that the stay would simplify the issues and eliminate these cases, just as they are arguing again now. But Defendants' arguments proved incorrect. The stay did not simplify issues and did not eliminate any case (or even any single Ravgen patent claim). And when these cases restarted after the stay, Defendants' first action was to ask the Court to prioritize their next-favorite defense of inequitable conduct in the post-stay case schedule. The Court correctly denied that request, and nothing has changed since. Yet Defendants continue unabashed, asking the Court now *for the third time* to give

1

preferential treatment to a new defense that they promise will be case-dispositive. Defendants' re-run request is unprecedented and unjustified, and Defendants cannot show good cause to reconfigure the case schedule to allow Defendants to serially try defenses of their choosing.

Defendants' renewed promise that their next defense will carry the day does not justify further modifying the schedule. And the interests of justice do not favor allowing Defendants serial chances to try their defenses before Ravgen ever gets its day in court. The Court should deny Defendants' Motion and leave the case schedule undisturbed.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Defendants Convinced The Court To Halt These Cases For A Year To Let The PTAB Resolve Defendants' Preferred Invalidity Defenses And Repeatedly Promised The Court Those Defenses Would End These Cases.

On November 29, 2021, Myriad moved for a stay pending IPR; the other Defendants later joined that motion. *See* C.A. No. 20-1730, D.I. 52; C.A. No. 20-1646, D.I. 100; C.A. No. 20-1734, D.I. 54. Defendants argued extensively that a stay would simplify issues and eliminate these cases. C.A. No. 20-1730, D.I. 53 at 8 ("If the PTAB invalidates all of those claims, ***the case will likely be over***[.]"); C.A. No. 20-1730, D.I. 58 at 1 ("Taken together, all five instituted IPRs make it likely that the PTAB will not just simplify the issues in this case, but ***dispose of the case in its entirety***."), 8 ("The IPRs will likely invalidate some or all of the asserted claims, ***making any time spent addressing those claims a wasted effort***."); C.A. No. 20-1734, D.I. 54 at 2 ("Therefore, resolution of the IPRs may ***dispose of two of these cases in their entirety, and the majority of the remaining cases***."). Defendants maintained those positions throughout the stay, even as the IPRs were failing to eliminate any claims. C.A. No. 20-1730, D.I. 78 at 8 ("[F]or FMI ***the case would be resolved entirely*** if the challenged '720 Patent claims are determined to be unpatentable in the upcoming decisions."); C.A. No. 20-1730, D.I. 80 ("There thus remains a good possibility that the Illumina

2

IPRs will ***greatly simplify if not eliminate the cases before this Court***[.]"). Then, after the IPRs upheld all claims, the Court lifted the stay on February 13, 2023.  C.A. No. 20-1730, D.I. 84.

After the stay was lifted, Defendants immediately sought to prioritize their next favorite defense, asking for an early inequitable conduct trial ahead of summary judgment in the post-stay schedule. C.A. No. 20-1730, D.I. 87 at 10. In a letter to the Court regarding the schedule, Defendants put forth the same arguments they now repeat in their Motion. *See* C.A. 20-1730, D.I. 87-1 at 3–4. The Court correctly denied Defendants' request to expedite the inequitable conduct defense. Hearing Transcript of March 10, 2023 Scheduling Conference at 7:5–7.

      **B.**      **Roche Has Admitted In Other Litigations That The "Controversy" That Defendants Argue As The Basis For Inequitable Conduct Was Actually Resolved In Ravgen's Favor.**

Defendants harp on repeated allegations that there was "controversy" about Ravgen's experimental results, but even defendant Roche has previously argued that there was nothing to the alleged "controversy." In an opposition at the European Patent Office, Roche addressed the same issues raised by the same papers Defendants argue about now (Chinnapapagari and Chung), recounting that there had been "allegedly contradictory results of different research groups, some reporting a stabilizing effect of formaldehyde (Dhallan et al. and Benachi et al.) while others reported no effect (Chinnapapagari et al. and Chung et al.)." Ex. 1 at 17.

But while Defendants argue here that the "controversy" was so serious that the scientific community allegedly "discredited" Dr. Dhallan's invention (Motion at 8), Roche took the ***exact opposite position*** in the EPO. Ex. 2 at 13–15. Specifically, Roche admitted that later papers, including a 2008 study by Zhang et al.,[1] "***confirm[ed] the hypothesis proposed by Dhallan et al.***," a finding that contradicted the very same Chinnapapagari and Chung papers that Defendants now

---

[1] The Zhang study (attached hereto as Exhibit 3) is referred to as "D10" in the EPO papers.

3

extoll because those authors had deviated from Dr. Dhallan's methods. *Id.* at 15. As Roche admitted, "[Zhang] could indeed explain and rationalize the previously observed differences" because "[t]he authors of [Zhang] noted differences in the sample processing times of the different research groups." Ex. 1 at 17.

And ultimately, as Roche admitted, "[a] protective effect of formaldehyde could indeed be detected if the whole blood sample was stored for a prolonged period of time before plasma preparation," **validating Ravgen's and Dr. Dhallan's reported results**. *Id.*; *see also* Ex. 2 at 15 ("[Zhang] **resolved the controversy** in the prior art and … confirmed that formaldehyde addition preserves [cell-free fetal DNA] integrity and relative abundance in maternal plasma samples which are to be stored for more than 24 hours.").

  **C. Judge Klausner Did Not Consider PTAB Final Written Decisions Or Roche's Contradictory Positions When He Decided Summary Judgment And Scheduled A Bench Trial.**

Defendants rely heavily on Judge Klausner's actions in the *Quest* case,[2] which occurred in very different circumstances than those currently before this Court. In *Quest*, Judge Klausner issued an opinion (now vacated) denying the parties' cross-motions for summary judgment on inequitable conduct. *Quest*, D.I. 449; D.I. 492. That opinion issued before the numerous PTAB decisions repeatedly upholding Ravgen's claims despite the Chinnapapagari and Chung papers and did not even address materiality. The vacated opinion stated that "there are multiple inferences which could be drawn, not 'a single most reasonable inference,' as to why the [sic] Dr. Dhallan and Dr. Cronin did not disclose the known publications to the PTO…. Having found a dispute as to the element of specific intent, ***the Court need not address whether the omitted references are material***." *Quest*, D.I. 449 at 13–14. Judge Klausner also noted that "Ravgen presented evidence

---

[2] *Ravgen, Inc. v. Quest Diagnostics Inc. et al.*, No. 21-9011-GK-GJS (C.D. Cal.).

that [Drs. Dhallan and Cronin] did not believe the [references] to be relevant comparisons" to the patented methods, and that Ravgen also had not submitted third-party references to the PTO that ***supported*** its results. *Id.* at 13. Trial was scheduled to begin on October 11, 2022. At the pretrial conference, Judge Klausner noted he preferred to hold the bench trial first for ease of rescheduling around his criminal docket, but could start the jury trial the very next day after the bench trial. Ex. 4 [*Quest,* D.I. 477] at 19:19–23:8 ("[Ravgen's counsel:] All I'm saying is, we can start the trial on the first day and do the PTO trial. We will be finished in one day. And the very next day pick the jury.  THE COURT: Yes. Okay."). On October 7, 2022, as often happens on the eve of trial, the parties settled. *Quest*, D.I. 492.

After the *Quest* case settled, the PTAB ruled on the instituted IPR petitions that these cases were halted for, finding all claims patentable in every single final decision.  In each of those IPRs, ***the very references that were allegedly material to patentability of the patents-in-suit were before the PTO***, but the claims were nevertheless upheld.  The PTAB found that all claims were patentable over the references petitioners raised because there was no motivation to combine those references or because the references failed to disclose all elements of the claims.  IPR2021-01271, Paper 45 at 43, 48–49; IPR2021-01272, Paper 50 at 56; IPR2021-01054, Paper 51 at 48; IPR2021-00902, Paper 55 at 48; IPR2021-01026, Paper 51 at 38–40; IPR2021-01577, Paper 62 at 87.

### III.    ARGUMENT

Defendants' Motion should be denied for three reasons. ***First***, Defendants have already upended the case schedule once to try their best defense, and the Court already denied the same request Defendants now re-raise to prioritize their next-best defense.  ***Second,*** judicial economy does not favor prioritizing inequitable conduct because Defendants' burden is high and holding a bench trial before dispositive motions would result in greater expenditure of judicial resources, not

less. ***Third,*** to the extent any trial on inequitable conduct is necessary at all in these cases, it should occur at the same time as any jury trial to resolve all claims at the same time.

> **A.   The Court Should Not Modify The Case Schedule For A Second Time To Give Another Defense Chosen By Defendants Priority Over Ravgen's Claims.**

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Defendants' subjective belief in the strength of their defense is not a "good cause" for which the Court should depart from the basic rules of case scheduling. *See Vaxcel Int'l Co. v. HeathCo LLC*, No. CV 20-224-LPS, 2022 WL 611067, at *3 (D. Del. Feb. 3, 2022) (denying motion for early summary judgment because although defendant "undoubtedly believe[d] that its arguments are 'compelling' and will, once heard, end this case," there was no reason to change the schedule to "accord early priority to [defendant's] case-dispositive motions"). Defendants should not be given priority to take a shot at another defense before Ravgen has any chance to litigate its own claims. Case schedules are made to allow both sides to develop their cases in parallel, not to allow the side that promises it has a stronger case to go first. *See Vaxcel*, 2022 WL at *3; *Neology, Inc. v. Fed. Signal Corp.*, No. CA 11-672-LPS-MPT, 2012 WL 4342070, at *2 (D. Del. Sept. 21, 2012) (denying motion to file early summary judgment because "[t]he purpose of a scheduling order is to provide concrete deadlines on which the parties can rely in planning their respective litigation strategies"). And given that Defendants have ***already*** had a chance to let their prior best (and ultimately unsuccessful) invalidity defense go first, it would be manifestly unfair to prioritize Defendants' next-best defense ahead of Ravgen's claims.

The sudden urgency in Defendants' request to accelerate case deadlines for the inequitable conduct defense to resolve it "early next year"—and before summary judgment—is belied by certain Defendants' failure to even plead the defense until just a few weeks ago. C.A. No. 20-1730, D.I. 144 (Myriad amended pleading adding inequitable conduct issues on July 13, 2023). That

6

delay for a defense Defendants claim is so critical that it should be fast-tracked ahead of all other issues in these cases is unexplainable considering Myriad was granted leave to add its inequitable conduct defense *over three months ago*. C.A. No. 20-1730, D.I. 99. Defendants' feigned urgency is transparent, and the Court should see through it and leave the case schedule unchanged.

> **B.     Judicial Resources Will Not Be Conserved By An Early Bench Trial, And Resources Will Instead Be Wasted If Defendants Fail To Produce Sufficient Evidence To Warrant Any Trial On Inequitable Conduct.**

Defendants' main argument for an early bench trial is that it could preserve judicial resources. Motion at 9–10. But proving inequitable conduct is notoriously difficult. The Court need not (and indeed could not) decide the merits of the inequitable conduct defense on the current incomplete record. Until the record is fully developed and the Court has an opportunity to assess Defendants' inequitable conduct defense at the summary judgment stage, it is just as likely that Defendants' requested early trial would *waste* judicial resources rather than conserve them. *WebXchange Inc. v. Dell Inc.*, No. CIV.A. 08-132-JJF, 2009 WL 5173485, at *3 (D. Del. Dec. 30, 2009) (denying motion to bifurcate and hold early bench trial on inequitable conduct because judicial economy argument was merely "based on the assumption that Defendants will succeed" and there was a high burden to prevail).

Defendants not only ask the Court to schedule a bench trial on inequitable conduct before any jury trials, but also ask the Court to schedule the bench trial *before any summary judgment motions*. Motion at 10. Trying inequitable conduct prematurely, before the pressure-test of summary judgment, will not serve the purposes of justice and judicial economy. *Hoffman v. Jacobi*, No. 4:14-CV-00012-SEB, 2014 WL 5488430, at *3 (S.D. Ind. Oct. 29, 2014) ("The purpose of pre-trial procedure is to serve the best interests of justice by eliminating unnecessary proof and issues and weeding out unsupportable claims.") (citing *Gomez v. Trustees of Harvard Univ.*, 676 F.Supp. 13, 15 (D.D.C. 1987)). Even in the *Quest* case on which Defendants rely

7

heavily, the Court scheduled a bench trial for inequitable conduct only **after** summary judgment motions **and also after the pre-trial conference**, at the very end of the case.[3] There is no reason to take a drastically different approach here, and certainly no reason to simply assume a vacated summary judgment decision based on a very different record in *Quest* necessarily guarantees inequitable conduct defenses will survive summary judgment here. At the very least, the Court should keep the current schedule and allow summary judgment to determine whether any trial on this defense will even be necessary.

Defendants also argue that the vacated opinion in *Quest* indicates the "seriousness" of their inequitable conduct allegations (Motion at 2), but that argument is misguided. For inequitable conduct, Defendants must prove both (1) but-for materiality and (2) specific intent to deceive. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). The *Quest* opinion—in addition to being vacated—did not reach the issue of materiality at all, much less conclude that the Chinnapapagari and Chung references were material. *Quest*, D.I. 449 at 13–14. And ample evidence will show that these references **are not** material: they are third-party publications that—as Roche has admitted in its EPO opposition proceedings—merely purport to have failed to reproduce the results in Dr. Dhallan's publication, as often happens in the regular course of scientific experimentation and discovery. *See* Ex. 1 at 17–18; Ex. 2 at 13–15. And the Chinnapapagari and Chung references do not show that Dr. Dhallan's work was "discredited by the scientific community," as Defendants argue (Motion at 8)—rather, other publications **supported** Dr. Dhallan's work, which has been adopted by nearly every major industry player in

---

[3] Defendants insinuate that Judge Klausner scheduled the bench trial first because of his belief in the merits of their defense. But when that determination was made, Judge Klausner made clear that his concern was ability to reschedule any trial around his criminal docket, which was easier for a bench trial. Ex. 4 [*Quest,* D.I. 477] at 19:19–23:8.

the non-invasive prenatal testing space. *See* Ex. 3 (Zhang study "confirm[ing] the hypothesis proposed by Dhallan et al."), Ex. 5 (Benachi study "conclud[ing] that formaldehyde increases the percentage of free fetal DNA in maternal plasma or serum by inhibiting maternal cell lysis").

Defendants (including Roche) asking to hasten their inequitable conduct defense is particularly indefensible in view of Roche's directly contrary arguments in other proceedings. Roche itself admitted that there was nothing to the "controversy" surrounding the Chinnapapagari and Chung references—with the scientific community *accepting* Dr. Dhallan's discovery. Defendants cannot credibly claim that Dr. Dhallan's experiments were so faulty as to warrant inequitable conduct when Roche publicly ***endorsed Dr. Dhallan's results over the Chinnapapagari and Chung critics*** and unequivocally admitted that any "controversy" spurred by their papers was "***resolved" in Dr. Dhallan's favor***. *See* Ex. 2 at 15. Indeed, Roche maintained that position in multiple filings, all the way through its appeal brief in the EPO, admitting that "[Zhang] clearly demonstrates that formaldehyde treatment increased … the percentage of cell-free fetal DNA during long-term storage by stabilizing cells." Ex. 6 at 13. Now that it is facing Ravgen's infringement claims, however, Roche switches sides—without disclosing its prior position to the Court and without even mentioning the prior arguments or the EPO opposition in the Motion—to claim that the Chinnapapagari and Chung papers definitively disprove Ravgen's reported results. When Roche has previously agreed that the Chinnapapagari and Chung articles were immaterial because others soon proved Ravgen was right all along, it is hard to fathom how Defendants will be able to prove the materiality of those references.

Furthermore, after the *Quest* decision was issued and vacated, the PTO upheld Ravgen's patent claims, despite being provided with the allegedly-material references. Defendants' inequitable conduct allegations rely entirely on evidence that did not change a thing when it was

9

actually provided to the PTO. Defendants argue in a footnote that this Court should disregard the fact that the Chinnapapagari and Chung references were before the PTO in the IPRs because the PTO did not expressly rely on those references (Motion at 9, fn. 4), **but that is exactly the point**. For a reference to be but-for material to patentability, it must lead to invalidation of the claims by the PTO. The PTO concluded the opposite, finding that the claims were patentable despite any alleged "controversy" espoused by the Chinnapapagari and Chung references. In the wake of the PTO's decision, "[t]here is simply no space for speculation regarding what the PTO would have done had it known of the [] references…. What the PTO would have done is known[.]"[4] *See AAMP of Fla., Inc v. Auto. Data Sols., Inc.*, No. 8:13-CV-2019-T-35TGW, 2015 WL 12843845, at *29 (M.D. Fla. Oct. 8, 2015).

To the extent Defendants argue that Chinnapapagari and Chung would have led to a conclusion from the patent examiner that differed from the PTAB's result, Defendants ignore the fundamental similarity of the prior art before the examiner and the art in the IPRs. Across the IPRs, the petitioners argued obviousness based on combining references for analyzing cell-free DNA with references for using formaldehyde to fix cells—the very arguments underlying the examiner's original rejections. The PTAB's reasoning applies equally to the original art considered by the examiner to the art raised during IPR and similarly confirms the immateriality of the references. *California Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW (AGRX), 2019 WL 8807748, at *6 (C.D. Cal. July 1, 2019), *aff'd*, 25 F.4th 976 (Fed. Cir. 2022) (granting summary judgment of no inequitable conduct and noting that "[t]he fact that the PTAB considered and rejected

---

[4] While a reference may still be material even if a **district court** did not find that reference invalidating, that is because different standards of proof apply in the PTO and district court, whereas an IPR uses the PTO's evidentiary standard. *See Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1334 (Fed. Cir. 2012) (explaining that a district court's failure to invalidate a patent was not necessarily dispositive of materiality due to the different standard of proof).

10

obviousness combinations where [certain prior art references] were offered for the same concept that Defendants also would offer [a different reference] similarly supports the conclusion that [the different reference] is not but-for material to the patentability of the asserted claims").

Defendants' current attempt to manufacture deceptive intent from Ravgen's reported experimental results in the patent specifications likewise falls flat. *See* Motion at 5–6, fn. 3. Defendants' only purported evidence of "manipulat[ion]" is Ravgen's use of the word "represent" in connection with the experimental results, but all scientific observations must be "represented" in some manner. Defendants do not even allege that Ravgen deliberately designed its reporting of its experimental results to mislead the examiner (particularly considering Ravgen's patents explain exactly how the reported data was obtained and calculated), much less that that the examiner was materially misled about those results.[5]

### C. Any Trial On Inequitable Conduct Should Occur At The Same Time As A Jury Trial For Efficient Resolution Of All Claims.

To the extent the Court decides that the defendants' allegations of inequitable conduct are sufficient to survive summary judgment and warrant a bench trial, any such bench trial should occur at the same time as a jury trial, as courts routinely do when there are equitable issues to be tried. Indeed, in the *Quest* case upon which Defendants rely, the Court scheduled a bench trial for inequitable conduct ***after the pre-trial conference*** and right before the jury trial. Taking the same approach here would set a bench trial almost concurrently with any jury trial—i.e., after the October 18, 2024 pre-trial conference and before the October 28, 2024 trial date—which is a sensible approach if the Court determines such a bench trial is ultimately warranted.

---

[5] Indeed, the patents also include a summary table of the reported experimental results that clearly sets forth the interpretation of the results as meaning the samples contained >50% fetal DNA. *See* Table XXII, '277 Patent at col. 226; '720 Patent at col. 216. *See also* '277 Patent at 222:55–57, '720 Patent at 213:31–33 (describing samples as having "fifty percent or greater" fetal DNA in maternal blood).

11

The current case schedule would allow an inequitable conduct bench trial, if necessary, to occur concurrently with any jury trial, consistent with routine precedent. In fact, it is "standard practice" to hold trials on inequitable conduct after jury trials. *Liqwd, Inc. v. L'Oreal USA, Inc.*, No. CV 17-14-JFB-SRF, 2019 WL 365708, at *2 (D. Del. Jan. 30, 2019). Factual issues of materiality and validity might overlap, and at least one witness, the inventor Dr. Ravinder Dhallan, would likely be testifying in both the jury trial and bench trial. Thus, it will be most efficient to conduct the bench trial concurrently with any jury trial, when the witnesses, counsel, and the Court will all be present and available.

Defendants' examples of courts setting unenforceability trials before jury trials involved allegations very unlike the current cases—not involving allegedly material withheld references, or in some cases, inequitable conduct at all. *See* Motion at 10. For example, in *Armament Systems*, the allegations of inequitable conduct were based on the inventor's submission of a knowingly false declaration and fabricated evidence to the PTO (with supporting expert evidence of fabrication), which did not have any relation to validity or withheld references. *See Armament Sys. & Procs., Inc. v. IQ Hong Kong, Ltd*., No. 00-C-1257, 2007 WL 101230, at *2, *3, *5 (E.D. Wisc. Jan. 10, 2007). And in fact, there the court explicitly stated that if allegations of withholding references were the only basis for the inequitable conduct allegations (as here), "**a separate [early] trial would not be warranted**." *Id.* at *2 fn. 2.  In *Koninklijke Philips N.V. v. Telit Wireless Sols., Inc.*, the enforceability trial did not even relate to inequitable conduct but rather implied waiver, and was one of *several* distinct phases of trial to be scheduled, alongside separate trials of damages and FRAND issues. No. 1:20-cv-1708-CFC-CJB (D. Del.), D.I. 68 (May 9, 2022), D.I. 70 at 1, 8. And in *Robocast Inc. v. Apple Inc.*, the inequitable conduct allegations related to an allegedly fabricated declaration in parent patent applications to a patent being tried in the case, and the bench

12

trial was scheduled only *after* the Court had already denied summary judgment on inequitable conduct. 39 F. Supp. 3d 552, 569–72 (D. Del. Apr. 22, 2014); *Robocast, Inc. v. Apple Inc.*, No. 11-235-RGA (D. Del. May 27, 2014), D.I. 480.

Additionally, inequitable conduct—on the same theories as Defendants argue here—is going to be tried on the same Ravgen patents in January 2024 in a related case in the Western District of Texas (*Ravgen, Inc. v. Natera, Inc. et al.*, C.A. No. 1:20-cv-00692 (W.D. Tex.)) if the defense survives upcoming summary judgment motions in that case, where the defendant Natera is represented by the same counsel from the Wilmer Hale law firm that is representing Defendants here. At minimum, efficiency counsels against setting any inequitable conduct trial in these cases until after the Court and the parties have the benefit of knowing the resolution of the same issue in that related case.

### IV.   CONCLUSION

For the foregoing reasons, Ravgen respectfully requests that the Court deny Defendants' Motion and retain the current case schedule.

Dated: August 14, 2023

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

John M. Desmarais (*pro hac vice*)
Kerri-Ann Limbeek (*pro hac vice*)
Brian D. Matty (*pro hac vice*)
Jamie L. Kringstein (*pro hac vice*)
Kyle G. Petrie (*pro hac vice*)

13

Joze Welsh (*pro hac vice*)
Jun Tong (*pro hac vice*)
Deborah J. Mariottini *(pro hac vice)*
Peter Zhu (*pro hac vice*)
Benjamin N. Luehrs (*pro hac vice*)
Frederick J. Ding (*pro hac vice*)
Julianne M. Thomsen (*pro hac vice*)
William Benjamin Nichols (*pro hac vice*)
**DESMARAIS LLP**
230 Park Avenue New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
jdesmarais@desmaraisllp.com
klimbeek@desmaraisllp.com
bmatty@desmaraisllp.com
jkringstein@desmaraisllp.com
kpetrie@desmaraisllp.com
jwelsh@desmaraisllp.com
jtong@desmaraisllp.com
dmariottini@desmaraisllp.com
pzhu@desmaraisllp.com
bluehrs@desmaraisllp.com
fding@desmaraisllp.com
jthomsen@desmaraisllp.com
wnichols@desmaraisllp.com
*Attorneys for Plaintiff Ravgen, Inc.*